UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ISMAEL MONTIEL MORENO,

               Petitioner,

    v.

JULIO HERNANDEZ, *et al.*,

               Respondents.

Case No. C26-1714-MLP

ORDER

Petitioner Ismael Montiel Moreno filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging an immigration judge's ("IJ") March 25, 2026, denial of bond and his continued detention at the Northwest ICE Processing Center ("NWIPC"). (Dkt. # 1.) He argues that the IJ abused her discretion in finding him to be a flight risk and that his continued detention under the Immigration and Nationality Act ("INA"), therefore, violates his due process rights under the Fifth Amendment. (*Id.* at 2, 10-13, 19-20.) Government Respondents filed a return memorandum (dkt. # 6), along with an unsworn declaration from their counsel, Barbara Andrade (dkt. # 7) ("Andrade Decl."), and a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Christopher Hubbard (dkt. # 8) ("Hubbard Decl."). Petitioner filed a traverse in reply. (Dkt. # 10.)

ORDER - 1

Having reviewed the parties' submissions and the governing law, the Court grants the petition (dkt. # 1) in part and ORDERS Petitioner's release from immigration custody for the reasons set forth below.[1]

## I.    BACKGROUND

Petitioner is a native and citizen of Mexico who first entered the United States on or around March 20, 2006, near San Luis, Arizona. (Hubbard Decl., ¶ 5; Dkt. # 1, ¶ 15.) He was granted "voluntary return" to Mexico by Border Patrol ("BP") the same day. (Hubbard Decl., ¶ 5.) Petitioner re-entered the United States and was similarly granted voluntary return twice more on March 21, 2006, and July 15, 2006. (*Id.*, ¶¶ 6-7.)

The date of Petitioner's most recent entry into the United States is not in the record and not known by Respondents (*see* Hubbard Decl., ¶ 4), but Petitioner asserts he has lived in the United States for over two decades. (Dkt. # 1, ¶ 22.)

Petitioner is married, has two U.S. citizen children, parents who are lawful permanent residents, and a U.S. citizen sister. (Dkt. # 1, ¶¶ 22-23.) Prior to his detention, he lived and worked in the Yakima area as the primary provider supporting his family. (*Id.*, ¶ 23.) His wife has "significant health issues" that require daily support. (*Id.*) He has no criminal history. (*See* Andrade Decl., ¶ 2, Ex. B at 3.)

On June 12, 2021, Petitioner's sister filed on his behalf, an I-130 (Petition for Alien Relative) with U.S. Citizenship and Immigration Services ("USCIS") which remains pending. (Hubbard Decl., ¶ 8.; *see* Andrade Decl., ¶ 2, Ex. B at 3.)

On September 17, 2025, ICE targeted and surveilled Petitioner for being "illegally present in the United States." (Andrade Decl., ¶ 2, Ex. B at 2.) After watching Petitioner drive

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 2

off in a vehicle, ICE officers followed the vehicle until it parked, at which point he was identified, taken into custody, and later transported to the Yakima ICE office for processing. (*Id.*) He has been detained since. (Hubbard Decl., ¶ 11.)

On November 5, 2025, an IJ (different from the IJ who denied bond here) denied Petitioner's application for cancellation of removal and adjustment of status but granted Petitioner voluntary departure. (Hubbard Decl., ¶ 17; *see* Andrade Decl., ¶ 5, Ex. D.) Officer Hubbard asserts that Petitioner appealed the IJ's grant of voluntary departure to the Board of Immigration Appeals ("BIA"), where it remains pending.[2] (Hubbard Decl., ¶ 18.)

On February 19, 2026, Petitioner and six other noncitizens filed a petition for a writ of habeas corpus in this District, challenging their detention under the INA as unlawful. *See Flores-Velazquez v. Hermosillo*, C26-00600-TMC, 2026 WL 523283, at *1 (W.D. Wash. Feb. 25, 2026). The Honorable Tiffany Cartwright granted the petition in part and ordered, relevant here, the immigration court to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at *2.

On March 25, 2026, Petitioner appeared for his bond hearing ordered under *Flores-Velazquez*, during which he presented the evidence identified above, *supra*, including his personal, family, and employment history. (*See* dkt. # 1, Ex. A at 4-40.) Petitioner also presented his driving and licensing records, property tax payment records, and approximately twenty-eight letters of support from family members and other individuals with connections to Petitioner. (*Id.* at 41-94.) Respondents, in turn, submitted excerpted pages from DHS's Form I-213 immigration history file and a voluntary departure order. (*See* dkt. # 1-3 at 3.)

---

[2] It is not clear from the record whether Petitioner appealed the IJ's denial of cancellation of removal. Petitioner does not address the scope of his appeal in his traverse.

ORDER - 3

At the conclusion of the hearing, the IJ denied Petitioner's request for bond. (Andrade Decl., ¶ 6, Ex. E.) The initial order was issued on a checkbox order and the box indicating "Flight Risk" is checked. (*Id.*) The "Conditional release" box is checked, but it does not indicate whether it was granted, denied, or not requested. (*Id.*) The order contains no written findings or analysis. (*Id.*) On April 18, 2026, Petitioner appealed the IJ's bond denial to the BIA, which remains pending. (Hubbard Decl., ¶ 23.)

On April 23, 2026, the IJ issued a written memorandum, consisting of just over two pages, outlining the bond determination and her reasoning. (Andrade Decl., ¶ 7, Ex. F.) The memo begins by providing limited procedural history leading up to the hearing. (*Id.*). It then discusses BIA case law related to a noncitizen's burden at custody determination hearings. (*Id.*) The IJ cites to *Matter of Guerra*, 24 I & N Dec. 37 (BIA 2006) and asserts that "even if [a noncitizen] is successful in carrying his or her burden to establish that he or she is not a danger to the community and that he or she will not abscond, the court can still deny bond as a matter of discretion." (*Id.* at 2.) The IJ goes on to list the *Guerra* factors used to determine whether a noncitizen merits release from bond and, if so, in what amount. (*Id.*) The remaining paragraphs briefly discuss Petitioner's history and ties to the United States, including, *inter alia*, his wife's medical diagnosis. (*Id.*)

After acknowledging DHS's position that Petitioner constitutes a flight risk, the IJ points out that "[Petitioner] has multiple attempted entries and voluntary return [sic]" and also notes that Petitioner's "application for cancellation of removal was denied by another [IJ] on November 5, 2025." (*Id.*)

The IJ's following concluding paragraph states:

> The court has considered all the factors present. Here the court does not find the respondent is a danger to the community or a national security risk. However, the

ORDER - 4

court finds due to his immigration history and lack of relief he is a flight risk. The court does not find respondent met his burden of proof to show he is not a flight risk.

(*Id.* at 3.)

The IJ accordingly denied Petitioner's request for bond or alternative conditions. (*Id.*)

Petitioner filed the instant petition on May 19, 2026, challenging the adequacy of the bond hearing, asserting that the immigration judge's decision violates the INA and the Due Process Clause. (Dkt. # 1, ¶ 3.)

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. 1, § 9, cl. 2). To succeed, a petitioner must show that he or she is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241.

## III.   DISCUSSION

Petitioner raises two claims. First, he alleges the IJ abused her discretion at the bond hearing by failing to address the required factors in determining whether he constituted a flight risk, in violation of 8 U.S.C. § 1226. (Dkt. # 1 at 19.) Second, he alleges that because his detention does not "bear a reasonable relation" to either preventing flight or preventing danger to the community, it violates the Due Process Clause of the Fifth Amendment. (*Id.* at 20.) He also contends that he should not be required to exhaust his administrative remedies before seeking federal habeas relief here or, alternatively, that the requirement should be waived. (*Id.* at 14-19.)

Respondents contend that Petitioner *should* be required to exhaust his appeal pending before the BIA and that, to the extent this Court has jurisdiction over his habeas claims, it should

ORDER - 5

deny the petition because Petitioner has failed to demonstrate the IJ's decision was an abuse of discretion or violates due process. (Dkt. # 6 at 2, 5-8.)

### A.    The Court has subject-matter jurisdiction to review the IJ's bond decision.

Respondents acknowledge that federal district courts have habeas jurisdiction over constitutional claims or questions of law and that, in the context of a challenge to an IJ's bond determination, the federal court's review is for an abuse of discretion. (Dkt. # 6 at 8-9.) As it relates to Petitioner's claim, however, Respondents appear to suggest this Court lacks subject-matter jurisdiction under 8 U.S.C. § 1226(e). (*See* dkt. # 6 at 2 (citing 8 U.S.C. § 1226(e)) ("[Petitioner] seeks to bypass [his appeal before the BIA], expressly designed to correct any alleged factual or legal errors in the IJ's bond determination, inviting this Court to improperly substitute its judgment for the IJ's.").)

Despite generally lacking subject-matter jurisdiction to review discretionary bond decisions, *see* 8 U.S.C. § 1226(e), that provision does not "preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (citation modified). A bond denial due to community danger or flight risk is a mixed question of law and fact, subject to judicial review by federal courts under an abuse of discretion standard. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

Thus, to the extent Respondents contend that § 1226(e) bars review, the Court disagrees. Petitioner is challenging the IJ's discretionary bond denial as legally erroneous and unconstitutional. (Dkt. # 1 at 19-20.) Accordingly, this Court has subject matter jurisdiction to review that denial. *See Kharis v. Sessions*, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

ORDER - 6

**B.      The Court waives the prudential exhaustion requirement.**

Respondents assert that Petitioner should be required to exhaust his administrative remedies before the BIA. (Dkt. # 6 at 4-8.) Petitioner contends that, under *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), the Court should find that exhaustion is not required, but even if it is, that the "inadequacy of the administrative appeal process and the irreparable harm resulting from agency delay" support waiving the requirement. (Dkt. # 1, ¶ 55.)

On habeas review under 28 U.S.C. § 2241, "[t]he exhaustion requirement is prudential, rather than jurisdictional[.]" *Hernandez*, 872 F.3d at 988 (internal citations omitted). In the Ninth Circuit, courts may require prudential exhaustion when: (1) "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision, (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme, and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Puga*, 488 F.3d at 815. If a court determines that an immigration detainee has failed to exhaust administrative remedies as a prudential matter, it should either dismiss the matter without prejudice or stay the case to permit exhaustion. *Id.*

Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7,

ORDER - 7

2019) (citations omitted). Both parties apply the *Puga* factors and discuss waiver but reach opposite conclusions. (*See* dkt. ## 1 ¶¶ 46-55, 6 at 5-8.)

As for the first *Puga* factor, Respondents assert that "the BIA has subject-matter expertise for individual immigration bond decisions, even if the BIA's review of the bond denial decision would not reach the specific constitutional claim raised in this case." (Dkt. # 6 at 5.) The Court finds that this weighs against requiring exhaustion. The Court acknowledges the BIA's general subject-matter expertise in individual immigration bond decisions. *Aiden*, 2019 WL 5802013, at *2. Here, however, Petitioner is challenging the bond denial as constitutionally deficient, a claim well suited for federal court review. *Hernandez*, 872 F.3d at 989. Further, the underlying facts in this case are well-developed and undisputed. The issue is whether, as a matter of law, the evidence presented at the bond hearing could establish that Petitioner posed a flight risk. The BIA's expertise in immigration bond decisions, or any further factual development, are therefore unnecessary to reach a proper decision. And finally, if the BIA "would not reach the specific constitutional claim raised in this case" as Respondents assert, it would be illogical to require exhaustion because Petitioner's claim is that the legal inadequacy of the IJ's bond determination unconstitutionally deprived him of his Fifth Amendment right to due process. (*See generally* dkt. # 1.) Requiring Petitioner to seek review with the BIA, therefore, would result in Petitioner spending additional time in civil detention for effectively nothing. The first *Puga* factor weighs against requiring prudential exhaustion.

As to the second *Puga* factor, Respondents assert that, because "Petitioner challenges a fact-specific bond determination," this case does not involve a "discrete legal question, the resolution of which may provide concrete guidance for future administrative proceedings." (Dkt. # 6 at 5 (quoting *W.T.M. v Bondi*, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026)).)

ORDER - 8

Respondents further assert that "the recent surge of § 1226(a) bond hearing challenges filed in this Court over the past month demonstrates that allowing further relaxation of the exhaustion requirement would continue to encourage other detainees to directly appeal their bond determinations to federal district court." (*Id.*)

As to Respondents' first point, this case *could* provide guidance on the types of circumstances that may lead to a finding of constitutional deficiency; namely, whether, as a matter of law, decades-old unlawful entries into the United States and the lack of immigration-related relief are, without more, sufficient bases for finding a noncitizen poses a risk of flight. On the other hand, this Court also acknowledges that this case is a not a class action, and judicial resolution of this individual petition is less likely to "provide concrete guidance for a large swath of future administrative proceedings." *Martinez v. Scott*, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025). As to Respondents' second point, while forgoing exhaustion may initially encourage some petitioners to bypass administrative review, "once the questions presented here are decided, they 'should cease to arise.'" *Hernandez*, 872 F.3d at 989 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). In addition, petitioners are always constrained by the requirement that their claims allege colorable constitutional or legal challenges, which further mitigates the concern asserted by Respondents. On balance, the Court finds that the second *Puga* factor leans slightly against requiring prudential exhaustion.

As for the third *Puga* factor, Respondents argue that because the BIA can review bond determinations, it "could preclude the need for judicial review." (Dkt. # 6 at 6 (citing *Calderon v. Mullin*, 2026 WL 1487774, at *2 (W.D. Wash. May 28, 2026)).) Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of

ORDER - 9

allowing the BIA to possibly correct an error. *Soriano v. Hernandez*, 2026 WL 969764, at *4 (W.D. Wash. April 10, 2026). This is particularly true in light of Respondents' assertion that the BIA likely would not reach Petitioner's constitutional claim. *See W.T.M.*, 2026 WL 262583, at *3 ("Here, the defect alleged by Petitioner is constitutional in nature, and it is unlikely that appeal to the BIA will permit the agency to correct a factual or evidentiary oversight by the IJ."). Accordingly, the third *Puga* factor weighs against requiring exhaustion.

Respondents' cited authorities to support requiring exhaustion, *Calderon* and *Zuo*, are distinguishable. In *Calderon*, the petitioner had already received a court-ordered bond hearing at which the Government bore the burden of proof, and the main argument advanced by the noncitizen petitioner (and addressed by the court) was whether the BIA's delay in reviewing a hearing constituted sufficient individualized harm to support waiving exhaustion. *Calderon v. Mullin*, 2026 WL 1487774, at *1, *3 (W.D. Wash. May 28, 2026). In *Zuo*, the reviewing court noted that the IJ had found petitioner to be a flight risk and a danger to the community "but provided no basis for the finding." *Zuo v. Hermosillo*, 2026 WL 809882, at *1 (W.D. Wash. Mar. 24, 2026). In other words, the "IJ's basis for its determination [was] unclear from the record." *Id.* Here, in contrast, Petitioner challenges more than just the BIA's delay in deciding appeals. And the IJ's basis for her determination *is* clear from the record—Petitioner's argument is that it was legally erroneous and an abuse of her discretion.

While the *Puga* factors support not requiring exhaustion, the Court would also waive the requirement exhaustion because Petitioner would suffer irreparable injury if he were required to wait for a BIA decision. *Laing*, 370 F.3d at 1000.

Respondents disagree with Petitioner's reliance on *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025) in arguing that lengthy BIA delays support waiving the exhaustion

ORDER - 10

requirement. (Dkt. # 5 at 6 (citing dkt. # 1, ¶ 56).) Respondents argue that Petitioner here, unlike the petitioners in *Rodriguez*, "has received a hearing, represented by counsel, where he had the opportunity to present or rebut any evidence to show his entitlement to bond under [8 U.S.C.] § 1226(a)." (*Id.*)

This misunderstands the point of Petitioner's argument, which is that the current BIA processing time is constitutionally deficient. (Dkt. # 1, ¶¶ 55-57.) *See Rodriguez*, 802 F. Supp. 3d at 1320 (finding that the average processing time for bond appeals supported finding the petitioners stated a "facially plausible" claim that the BIA's delays deprived them of their liberty interests under the Due Process Clause). Courts in this District have repeatedly found that the pursuit of administrative remedies would involve unreasonable delay. *See, e.g., Segura Serrano v. Scott*, 2026 WL 1674357, at *3 (W.D. Wash. June 1, 2026) (noting evidence of the BIA's "unprecedented" caseload after it was reduced in size by nearly one half in early 2025, data from 2024 showing BIA decisions take over six months, and that "data in 2025 indicates that the delay has exponentially worsened.") (cited sources omitted); *W.T.M.*, 2026 WL 262583, at *3 (noting data released by the Executive Office for Immigration Review reflecting that the average processing time for bond appeals in 2024 exceeded 200 days and that "[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals.") (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248-49, 1253-54 (W.D. Wash. 2025)).

Respondents also contend that Petitioner has not shown that he will suffer irreparable injury that is "unique to him." (*See* dkt. # 6 at 7.) Petitioner has been detained since September 2025 and asserts that his continued detention is unconstitutional. (Dkt. # 1 at 20.) "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable

ORDER - 11

injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Petitioner has shown that he is the primary caregiver for his family and that his wife suffers from a serious medical illness that requires daily care. (Dkt. # 1, ¶ 23.) As Petitioner asserts, "[h]is detention has thus left his family without their primary caregiver." (*Id.*) "[S]eparated families . . . are substantial injuries and even irreparable harms." *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017).

Under these circumstances, the Court finds Petitioner will suffer irreparable injury if he is required to wait for the BIA's decision before being permitted to seek review here. The Court therefore exercises its discretion to waive prudential exhaustion. Petitioner will not be required to remain detained at the NWIPC to pursue any administrative remedies related to his custodial status.

**C.      The IJ's bond denial was an abuse of discretion.**

Petitioner asserts that the IJ's bond denial was an abuse of discretion and constitutionally deficient because the conclusion she reached demonstrates that she failed to meaningfully engage with relevant factors and that, had she done so, it would have compelled the opposite conclusion (*i.e.*, that he has significant reason to *not* flee if released). (Dkt. # 1, ¶¶ 36-39.)

As noted, the Court reviews IJ bond determinations for an abuse of discretion. *See Martinez*, 124 F.4th at 779-80. Specifically, while factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id*. at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). That is, while the Court does not properly review "underlying factual determinations" such as "credibility, the seriousness of a family member's

ORDER - 12

medical condition, or the level of financial support a noncitizen currently provides[,]" it may review for an abuse of discretion pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id*. at 782-84 (quoting *Wilkinson*, 601 U.S. at 225). Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id*. at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

The parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). (Dkt. ## 1 at 9, 6 at 1.) In an initial bond determination under § 1226(a), the noncitizen "must establish to the satisfaction of the IJ and the BIA that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight. *Matter of Guerra*, 24 I & N Dec. at 40 (citing *In Re Adeniji*, 22 I & N Dec. 1102, 1112 (BIA 1999)); *cf.* 8 C.F.R. § 236.1(c)(8) (permitting DHS to release a noncitizen detained under § 1226(a) if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding").

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *Guerra*: (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the

ORDER - 13

[noncitizen's] manner of entry to the United States. *Martinez*, 124 F.4th at 783 (citing *Guerra*, 24 I. & N. Dec. at 40). The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 24 I & N Dec. at 40.

The IJ's findings and analysis contained in her written memorandum states, in relevant part:

> The respondent is a 40-year-old native and citizen of Mexico. He provided evidence in support of his request. The respondent has family ties in the United States. His parents are lawful permanent residents, his sister is a United States citizen. His sister filed a visa petition and it remains pending. The respondent has two citizen children. One child is age seventeen and attends high school. He has a child age nine. He does have medical, behavioral issues, and an Individualized Education Plan. His spouse does not have immigration status. She has medical issues including end stage kidney failure and receives dialysis daily. She is legally blind. A niece assists with her status. The respondent requests a bond in the amount of $10,000.
>
> The DHS argues the respondent is a flight risk. The respondent has multiple attempted entries and voluntary return. He did enter unlawfully on June 12, 2021. Here the respondent's application for cancellation of removal was denied by another Immigration Judge on November 5, 2025. He was granted the privilege of voluntary departure.
>
> The court has considered all the factors present. Here the court does not find the respondent is a danger to the community or a national security risk. However, the court finds due to his immigration history and lack of relief he is a flight risk. The court does not find respondent met his burden of proof to show he is not a flight risk.

(Andrade Decl., ¶ 7, Ex. F at 2-3 (citations omitted).)

The IJ relied on Petitioner's immigration history and Petitioner's denied application for cancellation of removal to support a finding of flight risk without explaining why those factors established flight risk or how they outweighed the other relevant *Guerra* factors. Beyond summarily concluding that "all factors present" were considered, it is entirely unclear what those

ORDER - 14

factors were and how they were weighed. The Court finds it notable that Respondents do not engage with or discuss the bases upon which the IJ relied in denying Petitioner bond, but rather summarily conclude that "the IJ carefully weighed the evidence and reasonably found that Petitioner failed to meet his burden demonstrating that he is not a flight risk." (Dkt. # 6 at 9-10.)

Turning to the IJ's first basis for denying bond—Petitioner's entries and departures from the United States—the Court finds it particularly problematic that the IJ's order misstates the relevant record. *See Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011) (remarking that misstating the record can be an indication that the BIA did not consider all the evidence before it). As Petitioner points out, the IJ's order incorrectly states that Petitioner unlawfully entered the United States on June 12, 2021. (Dkt. # 1, ¶ 28 n.1; *see* Andrade Decl., ¶ 7, Ex. F at 2.) As previously noted, Respondents do not challenge Petitioner's assertion (or the evidence demonstrating) that he has lived in the United States for two decades. (*See generally* dkt. # 6.) Thus, to the extent the IJ's order is "correct," the IJ's belief that Petitioner entered the United States in 2021 would suggest that she did not carefully consider the evidence submitted by Petitioner, which documents Petitioner's continuous connection to the Yakima area beginning as far back as 2003. (*See* dkt. # 1, Ex. A at 46, 48, 55, 65.) This is a material discrepancy because Petitioner's history of entering and voluntarily departing was one of two bases upon which the IJ relied in ultimately finding him to be a flight risk.

Setting that apparent error aside, the IJ fails to identify why Petitioner's entry and voluntary departure over twenty years ago would support the finding that he is motivated to flee or otherwise not appear at future immigration proceedings *today*. *See Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026) ("The IJ does not explain how [petitioner's] prior unlawful entry, an event that occurred almost three decades ago, . . . informs

ORDER - 15

his flight risk *today*, . . . in the face of overwhelming evidence of his deep ties to his community and family.") (emphasis in original). The record shows that Petitioner has two minor-age U.S. citizen children, that he has a wife with significant health complications who requires his emotional and financial support (dkt. # 1, Ex. A at 46), that he has lived in the Yakima area where he has consistently paid property taxes since at least 2010 (*id.* at 19-41), that he has a pending I-130 filed by his U.S. citizen sister (Hubbard Decl., ¶ 9), and that he has no criminal history (Andrade Decl., ¶ 3, Ex. B.) Numerous individuals with ties to Petitioner and his family wrote letters in support of Petitioner's bond request outlining in detail his ties to his family and community built over the last twenty-plus years. (*Id.* at 42-93.) And finally, as Petitioner argues, to the extent Petitioner's grant of voluntary departure twenty years ago is relevant, it weighs against a flight risk finding because it required the IJ to find, under 8 U.S.C. § 1229c(b)(1), that Petitioner is "a person of good moral character for at least 5 years immediately preceding the application for voluntary departure." (Dkt. # 10 at 10.)

The IJ's decision does not meaningfully engage with this evidence, articulate what weight any of it was afforded (if any), or why it was outweighed by his entries into the United States over twenty years ago. Arguably, at most, it evidences Petitioner's reluctance to return to Mexico or leave the United States, not that he poses a risk of absconding or otherwise failing to appear for immigration proceedings. The absence of a reasoned decision by the IJ limits the Court's ability to discern the connection between Petitioner's entries from the early 2000s and his risk of absconding today, as there is no further evidence in the record upon which a reasonable jurist could conclude that Petitioner is a flight risk based on his entry and departure over twenty years ago. Accordingly, Petitioner's entries into the United States and his voluntary return cannot rationally serve as a basis to deny bond.

ORDER - 16

The same can be said for the IJ's second basis for denying bond: the lack of immigration-related relief available to Petitioner. While the BIA has identified that an IJ may "consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond," *see Matter of R-A-V-P-*, 27 I & N Dec. 803, 805 (BIA 2020), the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano*, 2026 WL 1674357, at *7; *Tavurov v. Noem*, No. C26-0668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citing *Singh*, 638 F.3d at 1205). In her order, the IJ points to another IJ's November 5, 2025, denial of Petitioner's application for cancellation of removal as the other basis for finding Petitioner to be a flight risk. (Andrade Decl., ¶ 2, Ex. F at 3.) She does not cite to *R-A-V-P-* or provide any related analysis as to why Petitioner's denied application evidences a risk of flight. The IJ also fails to discuss Petitioner's pending I-130 beyond acknowledging that it has been filed and remains pending. (*See id.* at 2.) While it might be rational to draw the conclusion that a noncitizen who faces inevitable removal may be less likely to appear at future removal hearings, the IJ failed to make that connection to Petitioner's individual circumstances or otherwise discuss whether the "relative strengths or weaknesses of Petitioner's claims for relief outweighed" the significant evidence demonstrating Petitioner's fixed and stable connections to his family and community. *Soriano*, 2026 WL 969764, at *5. To the extent the IJ considered any of this information or factored it into her decision-making, that is not reflected in her memorandum.

Again, Petitioner has been living in the United States for over two decades, is in a stable relationship with his dependent wife, has dependent minor-aged United States citizen children, and has no criminal history. (*See generally* dkt. # 1.) Applying the factors articulated in *Guerra* to the evidence submitted by Petitioner would overwhelmingly weigh against a flight risk

ORDER - 17

finding, which necessarily means the IJ found the evidence submitted to be significantly outweighed by his immigration history and lack of relief. Yet the IJ provided no rationale or explanation that shows she meaningfully engaged with the relevant evidence or how it ultimately supported her conclusion that Petitioner poses a flight risk. Because the Court is "left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors," it "must conclude that the [IJ] failed to do so, which constitutes an abuse of discretion." *Vasquez Lopez v. Hernandez*, 2026 WL 984151, at *3 (W.D. Wash. April 13, 2026).

In sum, the IJ's bond denial does not rationally apply the governing legal standard to the facts and evidence here. The cited reasons for denying bond do not stand on their own as a basis to deny bond and it does not appear the IJ considered the significant amount of evidence in Petitioner's favor. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (finding that the BIA abuses its discretion "when it fails to consider and address in its entirety the evidence submitted by petitioner") (citation modified). Simply acknowledging contrary evidence is not enough; the IJ must meaningfully engage with it. *See, e.g., Miri v. Bondi*, 2026 WL 622302, at *8–9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an immigration judge did not explain the reasons for denying bond); *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion). No reasonable adjudicator could conclude on this record that Petitioner poses a flight risk. The IJ's decision was an abuse of discretion and Petitioner's continued detention violates due process.

**D.    Release is the appropriate remedy.**

Petitioner asserts that release is appropriate because he is not a flight risk. (Dkt. # 1 at 19-21.) Respondents are silent on the appropriate remedy beyond their general request for this

ORDER - 18

petition to be denied. (*See generally* dkt. # 6.) Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). This jurisdiction has found no basis for similarly situated petitioners to continue to be detained. *See Valdez-Reyes v. Scott*, 2026 WL 1361635, at *4 (W.D. Wash. May 15, 2026) (ordering immediate release); *Soriano*, 2026 WL 969764, at *6 (same); *Vasquez Lopez*, 2026 WL 984151, at * 3 (same); *W.T.M.*, 2026 WL 262583, at *5 (same). The Court finds the same here and thus the appropriate remedy is for Petitioner's immediate release with reasonable conditions of supervision.

### E.    Remaining requests for relief are denied.

Petitioner requests that, upon his release, Respondents be prohibited from requiring Petitioner to wear "an ankle monitor or wrist monitor" and be required to return Petitioner's personal property. (Dkt. # 1 at 21.) Petitioner also asks this Court to require the IJ who denied bond to both read this Court's order and affirm in writing that she has done so. (*Id.*) Petitioner does not provide relevant factual development or engage in any legal analysis related to those requests. They are therefore denied.

### IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS:

(1)    Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(2)    Respondents shall RELEASE Petitioner from custody within **twenty-four (24) hours** of the issuance of this Order with reasonable conditions of supervision.

(3)    Respondents shall file a notice with the Court confirming Petitioner's release within **forty-eight (48) hours**.

ORDER - 19

(4)    The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 18th day of June, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 20